Aruna Prabhala (Cal. Bar No. 278865)
Peter J. Broderick (Cal. Bar No. 293060)
CENTER FOR BIOLOGICAL DIVERSITY
2100 Franklin Street, Suite 375
Oakland, California 94612
Telephone:      (510) 844-7100
Facsimile:      (510) 844-7150
aprabhala@biolgicaldiversity.org
pbroderick@biologicaldiversity.org

*Attorneys for Amici Curiae for Attorneys for Amici
Curiae Center for Biological Diversity, Greenbelt
Alliance, Santa Clara Valley Open Space Author-
ity, Green Foothills, Gilroy Growing Smarter, and
Santa Clara Valley Bird Alliance*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| COUNTY OF SANTA CLARA; STATE OF CALIFORNIA, by and through Attorney General Rob Bonta,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | Case No. 5:26-cv-05604-EKL<br><br>**AMICUS CURIAE BRIEF OF CENTER FOR BIOLOGICAL DIVERSITY, GREENBELT ALLIANCE, SANTA CLARA VALLEY OPEN SPACE AUTHORITY, GREEN FOOTHILLS, GILROY GROWING SMARTER, AND SANTA CLARA VALLEY BIRD ALLIANCE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: September 8, 2026<br>Time: 2:00 p.m.<br>Crtrm: 7, 4th floor<br><br>Judge Hon Eumi K. Lee |

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY ................................................................................ 10

ARGUMENT ................................................................................................................... 10

    I.   Plaintiffs Are Likely to Succeed on the Merits of Their Lawsuit. ................................. 10

        a.  NEPA Was Enacted to Ensure that Federal Agencies Consider and Disclose Projects' Environmental, Health, and Public Safety Consequences. ........................................... 10

        b.  Defendants Failed to Conduct the Requisite Environmental Review ....................................... 12

    II.  Unless Injunctive Relief is Granted, Plaintiffs' Interests in the Health and Welfare of Their Residents and Natural Resources Will Be Irreparably Harmed. ....................................... 13

        a.  The Holsclaw Property Is Already Overburdened But Ecologically Valuable. ........................ 13

        b.  The Environmental Harms to Water, Species, and Habitat from Construction and Operation of the Facility Will Be Significant and Irreparable. ......................................................... 16

    III. The Public Interest and the Balance of the Equities Favor a Preliminary Injunction. ................... 17

CONCLUSION ................................................................................................................. 18

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

1

**TABLE OF AUTHORITIES**

**Federal Cases**

*Alabama Ass'n of Realtors v. Dep't of Health & Human Servs.*,
    594 U.S. 758 (2021) ........................................................................................ 18

*Amoco Prod. Co. v. Vill. of Gambell*,
    480 U.S. 531 (1987) .................................................................................... 13, 17

*California Wilderness Coal. v. U.S. Dep't of Energy*,
    631 F.3d 1072 (9th Cir. 2011) ...................................................................... 12

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
    36 F.4th 850 (9th Cir. 2022) ......................................................................... 11

*Esquivel Pacheco v. LaRose*,
    818 F. Supp. 3d 1168 (S.D. Cal. 2026) ....................................................... 18

*High Sierra Hikers Ass'n v. Blackwell*,
    390 F.3d 630 (9th Cir. 2004). ....................................................................... 12

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) ....................................................................................... 11

*Maryland v. Mullin*,
    No. CV 26-733-BAH, 2026 WL 1045503, at *32 (D. Md. Apr. 17, 2026) ........................................ 18

*Medrano-Rocha v. Santacruz*,
    817 F. Supp. 3d 871 (C.D. Cal. 2026) .......................................................... 18

*Omer G. G. v. Kaiser*,
    815 F. Supp. 3d 1098 (E.D. Cal. 2025) ........................................................ 18

*Robertson v. Methow Valley Citizens Council*,
    490 U.S. 332 (1989) .................................................................................. 11, 17

*Roman v. Wolf*,
    977 F.3d 935 (9th Cir. 2020) ...................................................................... 10, 17

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................................... 10

*Zhang v. Genalo*,
    814 F. Supp. 3d 307 (E.D.N.Y. 2025) .......................................................... 18

**Federal Statutes**

16 U.S.C. § 1532(5)(A) ........................................................................................ 15
42 U.S.C. § 4321 .................................................................................................. 11
42 U.S.C. § 4332(2)(C) ........................................................................................ 11
42 U.S.C. § 4332(2)(C)(i) ..................................................................................... 11
42 U.S.C. § 4332(2)(C)(iii) ................................................................................... 11
42 U.S.C. § 4332(C) ............................................................................................. 11
42 U.S.C. § 4336(b)(1) ......................................................................................... 12
42 U.S.C. § 4336(b)(2) ......................................................................................... 12
42 U.S.C. § 4336(e) .............................................................................................. 12
42 U.S.C. § 4336(e)(10)(A) .............................................................................. 11, 12

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

2

**INTRODUCTION AND SUMMARY**

As part of its rapid, headlong expansion of immigration detention infrastructure nationally, U.S. Immigration and Customs Enforcement ("ICE") and the other agencies and contractors named as Defendants in this lawsuit undertook to develop, construct, and operate an apparent immigration holding facility (the "Facility") at 7240 Holsclaw Road in unincorporated Santa Clara County near Gilroy, California ("Holsclaw Property"). Defendants did so without conducting the necessary environmental review or providing notice to the public, violating the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. ("NEPA") and prompting the County of Santa Clara and the State of California to file this lawsuit. The undersigned parties ("Environmental Amici") are national and local environmental and community groups, and a California special district, concerned about Defendants' open disregard for the law and the harm that their construction and operation of the Facility will cause to local waterways, vulnerable species, and habitat. Because Defendants are proceeding rapidly to construct and operate the Facility, it is critical that the Court grant the preliminary injunction sought by Plaintiffs. Without it, the County and State will suffer irreparable harm to the environment, affecting the Environmental Amici and their members. An injunction will allow time for meaningful participation and review of the environmental effects on the surrounding communities near the site and prevent predictable harm to the environment.

**ARGUMENT**

To obtain a preliminary injunction, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the federal government is a party, the latter two factors "merge." *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020). Plaintiffs have satisfied each of these criteria.

I.    **Plaintiffs Are Likely to Succeed on the Merits of Their Lawsuit.**

    a.    **NEPA Was Enacted to Ensure that Federal Agencies Consider and Disclose Projects' Environmental, Health, and Public Safety Consequences.**

NEPA was designed specifically to ensure that federal agencies do not obscure or ignore the environmental and public health consequences of their decisions. Congress enacted NEPA to (1) "prevent or

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

3

eliminate damage to the environment and biosphere," (2) "stimulate the health and welfare" of all people, and (3) "encourage productive and enjoyable harmony between [humankind] and [the] environment." 42 U.S.C. § 4321. NEPA seeks to accomplish these goals by requiring federal agencies to take a "hard look" at the environmental consequences of their actions. *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350 (1989) (citation omitted). NEPA ensures that *before* they act, federal agencies "will have available, and will carefully consider, detailed information concerning significant environmental impacts" and that such information "will be made available to the larger [public] audience that may also play a role in both the decisionmaking process and the implementation of that decision." *Id*. at 349. To achieve that purpose, NEPA imposes "action-forcing" procedures that require agencies to gather, disclose, and consider environmental information at the time decisions are made—before project momentum creates an irreversible and irretrievable commitment of resources. *See id*. (citation omitted); *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989); 42 U.S.C. § 4332(C).

As such, NEPA requires federal agencies to prepare a detailed environmental impact statement for any "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). A "major federal action" is defined as an action that the agency "determines is subject to substantial Federal control and responsibility." *Id*. § 4336e(10)(A). An environmental impact statement must describe the "reasonably foreseeable environmental effects of the proposed agency action." 42 U.S.C. § 4332(2)(C)(i). Defendant Department of Homeland Security's own NEPA policy manual explains that environmental effects include those that are "ecological (such as the effects on natural resources and on the components, structures, and functioning of affected ecosystems), aesthetic, historic, cultural, economic, social, or health, whether direct, indirect, or cumulative." Decl. of Leily Arzy in Supp. of Pls. Req. for Judicial Notice ("Arzy Decl.") Ex. 2, Dkt. No. 34-2, p. 8. The environmental impact statement must also examine "a reasonable range of alternatives to the proposed agency action," including the alternative of not taking the underlying proposed action. 42 U.S.C. § 4332(2)(C)(iii).

An agency's determination not to prepare an environmental impact statement is judicially reviewable. In those instances, "plaintiffs need not prove that significant environmental effects *will* occur; they need only raise a substantial question that they might." *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt*.,

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

4

36 F.4th 850, 878-79 (9th Cir. 2022) (citation modified). This results in a "low standard that is permissive for environmental challenge." *Id.* at 879 (citation modified). An agency "cannot merely assert that its decision will have an insignificant effect on the environment, but must adequately explain its decision." *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1097 (9th Cir. 2011) (citation modified).

To determine whether the environmental impacts of a proposed action may be "significant" and thus warrant preparation of an environmental impact statement, an agency may prepare an environmental assessment. 42 U.S.C. § 4336(b)(2). An environmental assessment is "a concise public document prepared by a Federal agency to set forth the basis of such agency's finding of no significant impact or determination that an environmental impact statement is necessary." *Id*. Where, as here, the agency prepares neither an environmental impact statement nor an environmental assessment, courts afford less deference to the agency's decision. *See High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 640 (9th Cir. 2004).

### b.  Defendants Failed to Conduct the Requisite Environmental Review.

Defendants were required to conduct environmental review before beginning construction and operation of the Facility. The undertaking is a "major Federal action[]" because it is "subject to substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A). Constructing and operating the Facility will have a "reasonably foreseeable significant effect on the quality of the human environment" by harming the local waterways, vulnerable species, and habitat. *Id*. § 4336(b)(1). There is no question that Defendants conducted no environmental review, and prepared no environmental document in conjunction with the project. *Id*. § 4336e(5) (An "environmental document" means an environmental impact statement, an environmental assessment, or a finding of no significant impact.). Nor did Defendants engage in any meaningful public disclosure.

The construction and operation of the Facility cannot plausibly be characterized as an action that "normally does not significantly affect the quality of the human environment." *See id.* § 4336e((1) (defining the types of actions that are subject to a "categorical exclusion" and do not require environmental review). Despite Defendants' failure to conduct any meaningful investigation, review, or disclosure of the Facility's potential environmental impacts, the available evidence shows that they will be significant. Construction and operation of the Facility would result in the intensification of land use and human activ-

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

5

ities in an agricultural zone along a critical riparian corridor, which would cause significant direct and indirect negative impacts to biological resources, including habitat destruction, degradation, and fragmentation as well as edge effects of increased water use, traffic, noise, light, and more. Decl. of Dr. Tiffany Yap, D.Env., in Supp. of Mot. for Prelim. Inj. ("Yap Decl."), Dkt. No. 36, p. 3.

**II.     Unless Injunctive Relief is Granted, Plaintiffs' Interests in the Health and Welfare of Their Residents and Natural Resources Will Be Irreparably Harmed.**

"Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). Absent a preliminary injunction directing Defendants to preserve the status quo on the Holsclaw Property until they perform the required assessment of the full range of environmental impacts, Plaintiffs' interests in the preservation of natural resources and the welfare of their residents, including members and supporters of the Environmental Amici, will suffer irreparable harm. Among other possible harms, Defendants' actions threaten local waterways, vulnerable species, and habitat.

**a.   The Holsclaw Property Is Already Overburdened But Ecologically Valuable.**

The Holsclaw Property is located in an area that is already disproportionately burdened with pollution and environmental hazards. The census tract in which the property is located is designated by the California Environmental Protection Agency ("CalEPA") as a "disadvantaged community" based on "geographic, socioeconomic, public health, and environmental hazard criteria."[1] According to CalEPA's environmental screening map, which identifies and evaluates pollution levels and population vulnerabilities for every census tract in the state, the location is within the upper quartile for numerous pollution burdens, with an exposure level higher than 78% of census tracts in the state.[2] These burdens include, but are not limited to: Impaired Waters (99th percentile), Pesticide Use (96th percentile), Hazardous Waste (90th

---

[1] *CalEnviroScreen SB 535 Disadvantaged Communities Map*, https://experience.arcgis.com/experience/1c21c53da8de48f1b946f3402fbae55c/page/SB-535-Disadvantaged-Communities (last visited July 4, 2026) (Census Tract 6085512602); *see also California Office of Environmental Health Hazard Assessment*, SB 535 Disadvantaged Communities, https://oehha.ca.gov/calenviroscreen/sb535 (last visited Jul. 4, 2026).

[2] *Id.*

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

percentile), and Groundwater Threats (75th percentile).[3] As Plaintiffs' motion and evidence demonstrate, there is a documented history of extensive mismanagement of hazardous materials at the Holsclaw Property. Pls. Notice of Mot. & Mot. for Prelim. Inj.; Mem. of P. & A. in Supp. ("PI Motion"), Dkt. No. 24, p. 11. DHS's own guidance indicates that proposed actions with potential for significant degradation of already poor environmental conditions require heightened scrutiny, indicating particular concern where a community or location already faces a heightened pollution burden. Arzy Decl., Exh. 2, Dkt. No. 34-2, pp. 35-36(environmental review cannot be avoided where there is a potential to degrade already existing poor environmental conditions).

Although the Holsclaw Property is in an area disproportionately burdened with pollution and environmental hazards, that does not diminish the site's biological and ecological significance. On the contrary, the site contains and is geographically proximate to highly valuable open space and riparian areas that provide key habitat for numerous special status species. The Holsclaw Property is located within the County's "Santa Clara Valley Agricultural Resource Area" ("ARA"), which was designated with the goals of "preserv[ing] the remaining working lands and support[ing] a vibrant agricultural economy while mitigating climate change" Yap Decl., Dkt. No. 36, p. 2 (citing the County of Santa Clara's *Santa Clara Valley Agricultural Plan*). The agricultural designation of the area also helps support the area's rich biodiversity, as working lands can provide the necessary open space and habitat for sensitive and special-status species when managed properly. *Id.*

The Holsclaw Property is immediately adjacent to Llagas Creek and the associated riparian corridor. According to the Santa Clara Valley Habitat Plan, this is a "major stream corridor" that supports native fishes and provides "critical connections for other aquatic and terrestrial species moving through urban or cultivated agricultural areas." *Id*. at p. 9. Riparian corridors are important live-in and move-through habitat for a wide variety of species. *Id.* Notably, Llagas Creek is federally designated "critical habitat" for the South-Central California Coast steelhead, which is listed as a threatened species under the Endangered Species Act. *Id*. at p. 5. Critical habitat is habitat with features or areas "essential to the con-

---

[3] *CalEnviroScreen 4.0 Indicator Maps*, https://experience.arcgis.com/experience/ed5953d89038431dbf4f22ab9abfe40d/ (last visited Jul. 4, 2026) (select for relevant category in menu).

servation of the species" and "which may require special management considerations or protection." 16 U.S.C. § 1532(5)(A)(i). Designated critical habitat for other protected aquatic or semi-aquatic species, including the California red-legged frog and California tiger salamander, is found within a few miles of the Holsclaw Property. Yap Decl., Dkt. No. 36, pp. 4-5. Further, more wide-ranging terrestrial species like mountain lions, whose populations in Santa Clara County are threatened and protected under state law, often use waterways and riparian areas like Llagas Creek as corridors for migration or foraging. *Id*. at p. 9.

The Holsclaw Property is also located less than a mile from a National Audubon Society-designated Important Bird Area ("IBA"), the Upper Pajaro River IBA, which provides important habitat for resident and migratory birds within the Pacific Flyway, a north-south migratory corridor that extends from Alaska to Patagonia. *Id.* at p. 5. IBAs consist of important habitat for migratory birds to find food, shelter, and nesting habitat. Hundreds of bird species have been documented in this IBA. *Id*. The Holsclaw Property's proximity to the IBA makes it a likely stopover and refuge for many of the birds that use or move through the IBA. Wildlife Corridor. *Id.*

According to the California Department of Fish and Wildlife's natural diversity database, at least forty sensitive and special-status animal and plant species have been documented in the close vicinity of the Holsclaw Property, though this number is likely underinclusive. *Id*. at pp. 3-4. These vulnerable species include South-Central California Coast steelhead (*Oncorhynchus mykiss*, federally threatened), California red-legged frog (*Rana draytonii*, federally threatened), Central Coast foothill yellow-legged frog (*Rana boylii*, federally threatened and state endangered), California tiger salamander (*Ambystoma californiense*, federally and state threatened), least Bell's vireo (*Vireo bellii pusillus*, federally and state endangered, tricolored blackbird (*Agelaius tricolor*, state threatened), northwestern pond turtle (*Actinemys marmorata*, federally proposed threatened), Central Coast and Southern California mountain lion (*Puma concolor*, state threatened), Bay checkerspot butterfly (*Euphydryas editha bayensis*, federally threatened), Crotch's bumble bee (*Bombus crotchii*, state candidate endangered), western bumble bee (*Bombus occidentalis*, state candidate endangered). *Id*. at pp. 4-5.

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

8

In short, the Holsclaw Property—which has been designated for low-impact agricultural use for decades—occupies an important position in eastern Santa Clara County and serves as an important component of a rich landscape of interconnected agricultural land and open space that supports and provides habitat for numerous threatened and endangered species. Defendants cannot wave away or ignore the impacts of the Facility's construction and operation on these resources.

**b. The Environmental Harms to Water, Species, and Habitat from Construction and Operation of the Facility Will Be Significant and Irreparable.**

Construction activities in the Facility area, including land clearing, grading, vegetation removal, soil compaction, and new areas of concrete and asphalt, will increase erosion, sedimentation, and runoff in Llagas Creek and significantly impact sensitive species. Yap Decl, Dkt. No. 36, p. 6. Encroachment and over-aggressive removal and degradation of riparian areas have been identified as major drivers of declines in California's freshwater and anadromous fish. *Id.* (citing scientific studies). Increased traffic on nearby roads from construction activities and operation of the site is likely to lead to increased chemical contaminants, microplastics, and heavy metals in stormwater runoff that could harm sensitive species. For example, storm-related runoff containing tire dust has led to mass die-offs of Pacific coho salmon in urban areas. *Id.* pp. 6-7. This may also pose a threat to many of the other sensitive and special-status species that occur in the area. *Id.*

Operation of the Facility is also likely to lead to sewage overflows and wastewater runoff, which would significantly impair Llagas Creek and downstream waterways and habitat. The Holsclaw Property is located in a FEMA-designated flood zone, and is not connected to County sewer systems nor equipped to handle the Facility's increased wastewater generation. PI Motion, Dkt. No. 24., pp. 21, 28-29. Sewage overflows pose a threat to human health and ecosystems. They can lead to increases in the presence of dangerous bacteria or pathogens, harsh chemicals used in cleaning and sanitation, nutrients like phosphorous and nitrogen (as ammonia) that can create conditions for eutrophication and harmful algal blooms, and other pollutant discharges. Yap Decl., Dkt. No. 36, p. 7. This can have disastrous consequences for wildlife. For example, sewage spills in waterways and estuaries have caused sickness and mass die-offs in black skimmers in Florida and fish and waterfowl in North Carolina. *Id*. Recently in Atlanta, sewage overflow led to thousands of fish being killed in a 20-mile stretch of the Chattahoochee River. *Id.*

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

9

Construction activities are also likely to lead to increased noise levels, traffic, and light pollution, all of which could have significant adverse effects on special status species. *Id*. at pp. 11-15. Along with increased use of pesticides and other pollutants, increases in invasive weeds, and increased fire frequency, these are known as the "edge effects" from development and human activity. *Id*. at p. 10. Edge effects are spillover effects and are biologically significant well beyond the boundaries of the site where the anthropogenic features are found. *Id.*

These significant environmental impacts cannot be reversed and are imminent should the construction of the Facility move forward. These types of harms are typically disclosed in an environmental review document prepared for projects like these pursuant to NEPA. *Id*. at p. 15. This environmental review typically includes the consideration and adoption of mitigation measures to avoid, minimize, or compensate for adverse environmental impacts. *Id.*; *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332 (1989) (an environmental impact statement should discuss the extent to which adverse effects can be avoided). Environmental review would also typically consider feasible alternatives that would meet the project's goals while imposing fewer adverse environmental impacts. Yap Decl., Dkt. No. 36, p. 15; 42 U.S.C. § 4332(C)(iii) (An environmental impact statement should consider a "reasonable range of alternatives" to the project). Because the Facility has not been the subject of such environmental review, Defendants have not given consideration to mitigation measures, project changes, or design features that would avoid, minimize, or compensate for the adverse environmental impacts. It is not too late. Granting preliminary injunctive relief will ensure that these irreversible harms are held at bay until Defendants evaluate them and determine how they can be avoided, reduced, or mitigated.

**III.    The Public Interest and the Balance of the Equities Favor a Preliminary Injunction.**

When the government is opposing a preliminary injunction, the balance of equities and public interest factors merge. *See Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020). The Supreme Court has recognized that "[i]f [environmental] injury is sufficiently likely, . . . the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987).

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

10

Here, the public interest and equities weigh in favor of preliminary injunctive relief. The preliminary injunction sought by Plaintiffs will preserve the status quo on the Holsclaw Property and prevent irreversible harm to the surrounding species and ecological communities, including the vulnerable Llagas Creek watershed, until Defendants take the "hard look" that NEPA requires. *Robertson*, 490 U.S. at 350 (citation modified). To the extent that Defendants claim a legitimate interest in the enforcement of federal immigration law, that interest does not override or usurp the public's interest in NEPA's statutory goals of environmental disclosure, consideration of alternatives, and public participation. Moreover, any claims of urgency are undermined by the fact that during the past year federal courts in California and throughout the country have frequently found ICE's detentions to be unlawful. *E.g.*, *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871 (C.D. Cal. 2026); *Pacheco v. LaRose*, 818 F. Supp. 3d 1168 (S.D. Cal. 2026); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098 (E.D. Cal. 2025); *Zhang v. Genalo*, 814 F. Supp. 3d 307 (E.D.N.Y. 2025); *see also Maryland v. Mullin*, No. CV 26-733-BAH, 2026 WL 1045503, at *32 (D. Md. Apr. 17, 2026) (citing examples). Defendants cannot credibly invoke urgent immigration or national security concerns to justify running roughshod over NEPA's carefully wrought procedural requirements. These requirements have been in place for over fifty years and are intended to ensure that federal agencies look before they leap, promoting transparency and public oversight.

It is not too much to ask that the federal government comply with the law while fulfilling its duties. As the Supreme Court has said, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758, 766 (2021). The harms to the environment that NEPA is designed to protect far outweigh any legitimate interest Defendants may claim to have in constructing a detention facility without first conducting the required environmental review. The public interest factors weigh in favor of granting injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for preliminary injunction.

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

11

DATED: July 27, 2026

CENTER FOR BIOLOGICAL DIVERSITY

By: _____

Peter J. Broderick
Aruna Prabhala

Attorneys for Amici Curiae CENTER FOR BIO-LOGICAL DIVERSITY, GREENBELT ALLI-ANCE, SANTA CLARA VALLEY OPEN SPACE AUTHORITY, GREEN FOOTHILLS, GILROY GROWING SMARTER, AND SANTA CLARA VALLEY BIRD ALLIANCE

Brief of Amici Curiae Center for Biological Diversity et al.
Case No. 5:26-cv-05604-EKL

12