Gregory A. Nylen (SBN CA 151129)
GREENBERG TRAURIG, LLP
18565 Jamboree Road, Suite 500
Irvine, California 92612
Telephone: 949.732.6500
Facsimile: 949.732.6501
nyleng@gtlaw.com

Stacey M. Bosshardt (SBN CA 255231)
Dominic E. Draye (SBN CA 267079)
GREENBERG TRAURIG, LLP
2101 L Street NW, Suite 1000
Washington, D.C. 20037
Telephone: 202.331.3100
Facsimile: 202.331.3101
drayed@gtlaw.com
stacey.bosshardt@gtlaw.com

Attorneys for ECG6 LLC

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

COUNTY OF SANTA CLARA; STATE OF CALIFORNIA, by and through Attorney General Rob Bonta,

Plaintiff,

v.

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; UNITED STATES GENERAL SERVICES ADMINISTRATION; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; EDWARD FORST, in his official capacity as Administrator of the General Services Administration; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; DAVID VENTURELLA, in his official capacity as Senior Official Performing the Duties of the Director of Immigration and Customs Enforcement; and ECG 6 LLC, a California limited liability company,

Defendant.

CASE NO. 5:26-cv-5604-EKL

Assigned to the Honorable Eumi K. Lee

**DEFENDANT ECG6 LLC'S NOTICE AND MOTION TO DISMISS ALL CLAIMS AGAINST ECG6**

| | |
|---|---|
| Date: | January 6, 2027 |
| Time: | 10:00 a.m. |
| Courtroom: | 7, 4th Floor |
| Action Filed: | June 10, 2026 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... II

NOTICE OF MOTION TO DISMISS ..... 1

STATEMENT OF ISSUES TO BE DECIDED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 2

STATEMENT OF FACTS ..... 2

STANDARD OF REVIEW ..... 3

ARGUMENT ..... 5

A. The Court should dismiss the NEPA claim against ECG6 under Rule 12(b)(6). ..... 5

B. The Court lacks supplemental jurisdiction over Plaintiffs' Williamson Act claim because it does not arise under a common nucleus of operative fact. ..... 7

C. The Court should decline to hear Plaintiffs' Williamson Act claim against Defendant ECG6. ..... 10

1. The Court should decline to exercise supplemental jurisdiction over the Williamson Act claim because it raises novel and complex issues of state law. ..... 11

2. The Court should decline to exercise supplemental jurisdiction over the Williamson Act claim if Plaintiffs' NEPA claim against ECG6 is dismissed. ..... 14

3. Judicial economy, convenience, fairness, and comity weigh in favor of declination of supplemental jurisdiction over the Williamson Act claim ..... 16

4. Plaintiffs' Williamson Act claim against Federal Defendants should also be dismissed. ..... 19

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alliance for the Wild Rockies v. Petrick*,
68 F.4th 475 (9th Cir. 2023) .......... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Bahrampour v. Lampert*,
356 F.3d 969 (9th Cir. 2004) .......... 7

*Bell v. Hood*,
327 U.S. 678 (1946) .......... 4

*Bennett v. City of Kingman*,
543 F. Supp. 3d 794 (D. Ariz. 2021) .......... 12

*Carne v. Stanislaus Cnty. Animal Servs. Agency*,
445 F. Supp. 3d 772 (E.D. Cal. 2020) .......... 8, 9

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) .......... 16

*Churchill Cnty. v. Babbitt*,
150 F.3d 1072 (9th Cir.), opinion amended and superseded .......... 6

*City of Fernley v. Conant*,
No. 22-15400, 2023 WL 2549792 (9th Cir. Mar. 17, 2023) .......... 13

*City of Waltham v. U.S. Postal Serv.*,
786 F. Supp. 105 (D. Mass. 1992), *aff'd*, 11 F.3d 235 (1st Cir. 1993) .......... 10

*Cleveland Nat'l Forest Found. v. Cnty. of San Diego*,
250 Cal. Rptr. 3d 305 (Cal. Ct. App. 2019) .......... 13, 19

*Cnty. of Humboldt v. McKee*,
82 Cal. Rptr. 3d 38 (Cal. Ct. App. 2008) .......... 17, 18, 19

*Cooper v. Armstrong Rubber Co.*,
Civ. A. No. J88-0464(L), 1989 WL 60338 (S.D. Miss. Feb. 1, 1989) .......... 5

*Detroit Mem'l Park Ass'n, Inc. v. City of Detroit Bd. of Zoning Appeals*,
105 F. Supp. 3d 769 (E.D. Mich. 2015) .......... 18

*Dream Palace v. Cnty. of Maricopa*,
384 F.3d 990 (9th Cir. 2004) .......... 11

*FERC v. Mississippi*,
456 U.S. 742 (1982) .......... 11

*Friends of the Earth v. Hintz*,
800 F.2d 822 (9th Cir. 1986) .......... 16

*Fund for Animals, Inc. v. Lujan*,
962 F.2d 1391 (9th Cir. 1992) .......... 6, 7

*Gill v. Dep't of Just.*,
246 F. Supp. 3d 1264 (N.D. Cal. 2017) .......... 17

*Gypsum Res., LLC v. Clark Cnty.*,
674 F. Supp. 3d 985 (D. Nev. 2023) .......... 12

*Hancock v. Train*,
426 U.S. 167 (1976) .......... 20

*Johnson v. City of San Jose*,
591 F. Supp. 3d 649 (N.D. Cal. 2022) .......... 18

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 4

law. *Okanogan Highlands All. v. Crown Res. Corp.*,
526 F. Supp. 3d 872 (E.D. Wash. 2021) .......... 9

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .......... 4

*Manufactured Home Cmtys. Inc. v. City of San Jose*,
420 F.3d 1022 (9th Cir. 2005) .......... 13, 14

*Maya v. Centex Corp.*,
658 F.3d 1060 .......... 4

*Mayo v. United States*,
319 U.S. 441 (1943) .......... 20

*Millar v. Bay Area Rapid Transit Dist.*,
236 F. Supp. 2d 1110 (N.D. Cal. 2002) .......... 19

*Native Ecosystems Council v. U.S. Forest Serv.*,
428 F.3d 1233 (9th Cir. 2005) .......... 5

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,
18 F.3d 1468 (9th Cir. 1994) .......... 17

*Pac. Bell Tel. Co. v. City of Walnut Creek*,
428 F. Supp. 2d 1037 (N.D. Cal. 2006) .......... 13, 14

*Parks Sch. of Bus., Inc. v. Symington*,
51 F.3d 1480 (9th Cir. 1995) ........ 4

*R.R. 1900, LLC v. City of Sacramento*,
604 F. Supp. 3d 968 (E.D. Cal. 2022)........ 14

*Rancho Palos Verdes Corp. v. City of Laguna Beach*,
547 F.2d 1092 (9th Cir. 1976) ........ 11, 12

*Rapanos v. United States*,
547 U.S. 715 (2006*)*........ 11

*Religious Tech. Ctr. v. Wollersheim*,
971 F.2d 364 (9th Cir. 1992) ........ 15

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........ 4

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Co.*,
605 U.S. 168 ........ 9, 18

*Sierra Club v. City of Hayward*,
623 P.2d 180 (Cal. 1981) ........ 13

*SLPR, LLC v. San Diego Unified Port Dist.*,
No. 06 CV 1327 MMA (POR), 2009 WL 10672896 (S.D. Cal. Oct. 2, 2009) ........ 17

*Timeline, Inc. v. Proclarity Corp.*,
No. C05-1013JLR, 2007 WL 1574069 (W.D. Wash. May 29, 2007)........ 15

*In re Tracht Gut, LLC*,
836 F.3d 1146 (9th Cir. 2016) ........ 4

*Unite Here Local 30 v. Sycuan Band of the Kumeyaay Nation*,
35 F.4th 695 (9th Cir. 2022) ........ 10

*United Mine Workers of America v. Gibbs*,
383 U.S. 715 (1966)........ 7, 14, 19

*Valles v. Pima Cnty.*,
642 F. Supp. 2d 936 (D. Ariz. 2009) ........ 8

*Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*,
371 F.3d 1046 (9th Cir. 2004) ........ 14

*Watkins v. Cal. Dep't of Corrs.*,
100 F. Supp. 2d 1227 (C.D. Cal. 2000) ........ 15, 16

*Wilderness Soc. v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) ........ 6

*Wilderness Watch v. Perdue*,
805 F. App'x 476 (9th Cir. 2020) ........ 7

*Zazzali for DBSI Priv. Actions Trust v. Alexander Partners, LLC*,
2015 WL 13640265 (D. Idaho Feb. 6, 2015) ........ 15

**Statutes**

5 U.S.C. § 701(b)(1) ........ 5

5 U.S.C. § 704 ........ 5

5 U.S.C. § 706 ........ 16

28 U.S.C. § 1367(a) ........ 7, 10

28 U.S.C. § 1367(c) ........ *passim*

28 U.S.C. § 1367(c)(1) ........ 10, 11, 13, 14

28 U.S.C. § 1367(c)(3) ........ 11, 14, 15

31 U.S.C. § 6506(c) ........ 9

42 U.S.C. § 4332 ........ *passim*

42 U.S.C. § 4332(G) ........ 7

Cal. Gov't Code § 51220 ........ 12

Cal. Gov’t Code § 51230 ........ 12

Cal. Gov’t Code § 51231 ........ 12

Cal. Gov’t Code § 51238.1 ........ 14

Cal. Gov’t Code § 51240 ........ 12

Cal. Gov’t Code § 51243 ........ 19

Cal. Gov’t Code § 51251 ........ 17

Cal. Gov’t Code § 51282 ........ 12

## NOTICE OF MOTION TO DISMISS

**TO THE CLERK OF THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE THAT ON** January 6, 2027, at 10:00 a.m., or as soon as thereafter as may be heard, before the Honorable Eumi K. Lee in Courtroom No. 7 of the United States District Court for the Northern District of California, 280 South 1st Street, San José, California 95113, Defendant ECG6 LLC will, and hereby does, move to dismiss Plaintiffs' claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiffs' claims against Defendant ECG6 LLC should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have failed to state a claim upon which relief may be granted against ECG6 under the National Environmental Policy Act, and because this Court lacks jurisdiction under Federal Rule of Civil Procedure 12(b)(1) over Plaintiffs' state-law (Williamson Act) claim. This Motion to Dismiss is supported by the accompanying Memorandum of Points and Authorities, Proposed Order of Dismissal, as well as the pleadings on file in this action, and any other written or oral evidence or argument as may be presented at or before the time this Motion is heard by the Court.

Pursuant to Section VIII.A of the Civil Standing Orders for this Court, counsel for Defendant ECG6 LLC certifies that on October 7, 2026, she met and conferred with counsel for Plaintiffs and Federal Defendants to discuss the basis for the motion.

## STATEMENT OF ISSUES TO BE DECIDED

Plaintiffs have sued federal agencies Department of Homeland Security (DHS), and Immigration and Customs Enforcement (ICE), and General Services Administration (GSA) over their plans to lease land and existing structures on an acre of land in San Jose County to use as an ICE office and holding center. Under a lease procured during the previous administration for a use blessed by Santa Clara County officials in 2023, the federal agencies leased the parcel from Defendant ECG6 LLC (ECG6), which is owned by a three-person real estate investment firm. Defendant ECG6 moves to dismiss Plaintiffs' claims

against it, one of which (Count One, the National Environmental Policy Act claim) fails to state a claim, and the other of which (Count Five, the Williamson Act claim) is not supported by federal subject matter jurisdiction. Count Five is a state-law claim concerning state land use law and the contractual relationship between non-federal parties; to the extent Plaintiffs rely on that claim for anything other than as a dragnet to ensnare a private real estate developer ECG6 in their political dispute against ICE, it can and should be brought in a different forum.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF FACTS[1]

Defendant ECG6 is the corporate entity that holds and operates the 24.5-acre property at 7240 Holsclaw Road property. Compl. ¶¶ 1-2, 17. ECG6 acquired the property in January 2025 and has leased 18,700 rentable square feet of "office and related Space" and an additional 5,300 rentable square feet "of free space" to DHS for use as an ICE holding facility. *Id.* ¶¶ 93, 100. ECG6 is owned by Elmwood Capital Group, a real three-person estate investment firm whose business is to procure and lease properties (sometimes after modifying them to meet government requirements) to federal agencies. *Id.* ¶¶ 93-94, 122. The Holsclaw property has been subject to a Williamson Act contract since 1967, which Plaintiffs aver requires that the property be used exclusively for agricultural purposes in exchange for tax benefits. *Id.* ¶ 215. The Complaint alleges that "[s]everal successive agricultural research companies that occupied the Holsclaw Property prior to the federal government's lease generated and managed hazardous waste, as well as stored and used hazardous materials regulated by State and County laws"; that there were spills of such materials; and that "[t]he federal government's apparent failure to address [or] mitigate . . . these risks [from discharges of hazardous wastes] endanger the construction workers building the site, detainees and employees who will be located at the site, and the environment beneath and surrounding the site." *Id.* ¶ 5.

---

[1] The facts in the Complaint are taken as true only for purposes of the Rule 12(b)(6) arguments, but ECG6 does not concede their truth.

The Complaint alleges that the "Federal Agency Defendants" violated NEPA by failing to prepare an Environmental Impact Statement; failing to take a "hard look" at the environmental effects of the facility and improperly relying on a categorical exclusion before entering into the lease and constructing an ICE facility. Compl. ¶¶ 173-83. The Complaint does not allege that NEPA imposes any obligations on ECG6 or that ECG6 participated in the NEPA process. It does not allege any omissions by ECG6 with respect to the NEPA process. Instead, it states the Court "should also enjoin Defendant ECG 6 LLC from further developing the Holsclaw Property until NEPA's procedural requirements are met." *Id.* ¶¶ 184-85. "Federal Agency Defendants" have also allegedly violated the Immigration and Nationality Act (INA) because "by deciding to lease and develop the Holsclaw Property as an ICE holding facility despite it being inappropriate for detention purposes" and "without consideration of other suitable facilities." *Id.* ¶¶ 193, 199. "Federal Agency Defendants' decisions to enter into the Lease and establish an ICE holding facility at the Holsclaw Property without considering state and local views violate the [Intergovernmental Cooperation Act (ICA)]." *Id.* ¶ 212.

Plaintiffs allege that Defendant ECG6, which owns the property subject to a Williamson Act contract, has violated the Act by seeking to convert "the Holsclaw Property to an ICE facility with detention capacity, which is a non-agricultural use, is incompatible with surrounding agricultural uses, and will destroy the long-term viability of the property for agricultural use." *Id.* ¶ 219. Further, "[b]y continuing to receive tax benefits from its Williamson Act contract, ECG 6 LLC is depriving the County of the benefit of its bargain." *Id.* As relief, Plaintiffs ask the Court to vacate the lease and "[d]eclare Defendants' intended use of the Holsclaw Property as violative of the restrictions imposed by the Williamson Act contract and enjoin Defendants' continued development, construction, and intended use of the Holsclaw Property." *Id.* at P. 57.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) requires a court to dismiss a claim when it lacks subject-

matter jurisdiction over that claim. Because federal courts are courts of limited jurisdiction, the presumption is that a court lacks jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Challenges to subject-matter jurisdiction may be factual or facial. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1041 (9th Cir. 2004). A facial challenge asserts that a complaint's allegations are insufficient on their face to invoke federal jurisdiction. *Id.; Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("A court is then to determine whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."). Dismissal is warranted when a purported federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction" or "is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946); *Safe Air for Everyone*, 373 F.3d at 1041. If a court determines it lacks subject-matter jurisdiction, it "must dismiss the action." Fed. R. Civ. P. 12(b)(1), (h)(3).

A party may also seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067-8 ("[T]he complaint cannot survive a motion to dismiss unless it alleges facts that plausibly (not merely conceivably) entitle plaintiff to relief."). But "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). When ruling on a motion under Rule 12(b)(6), courts may consider any material which is properly submitted or attached to the complaint as incorporated into the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

## ARGUMENT

### A. The Court should dismiss the NEPA claim against ECG6 under Rule 12(b)(6).

Plaintiffs' NEPA claim against ECG6 (Count One of the Complaint) should be dismissed because it fails to state a claim under Rule 12(b)(6). NEPA imposes certain disclosure and procedural obligations on federal agencies, not private individuals or real estate firms. *Cooper v. Armstrong Rubber Co*., Civ. A. No. J88-0464(L), 1989 WL 60338, at *2 (S.D. Miss. Feb. 1, 1989) ("The Act does not create a private right of action against private corporations."). It is the federal government agency that must determine whether NEPA applies (which is not disputed in this case); decide on the appropriate level of review; and prepare the NEPA document. 42 U.S.C. § 4332 (listing requirements for "all agencies of the Federal Government"). Indeed, Plaintiffs' NEPA claim (Compl. ¶¶ 170-185) does not plead any action by ECG6 that violates NEPA or even mention ECG6 by name, other than stating in the final two paragraphs that it should be included in the injunction. *Id.* ¶¶ 184-85; *compare with id.* ¶ 172 ("*Federal Agency Defendants'* failure to comply with NEPA…"); ¶ 173 ("*Federal Agency Defendants'* decision to enter a legally enforceable lease agreement and decision to construct an ICE facility …"); ¶ 175 ("The *Federal Agency Defendants'* decision to lease and construct the Holsclaw Property…"); ¶ 176 ("*Federal Agency Defendant*s failed to perform the requisite 'hard look' at the environmental consequences…") (emphasis added). The Complaint on its face fails to state a claim against ECG6.

In addition to the fact that NEPA on its face does not allow claims against private parties, the cause of action for NEPA claims applies only to federal agency actions. As this Circuit has repeatedly recognized, NEPA itself does not include a cause of action instead, NEPA actions are brought under the Administrative Procedure Act (APA). *Native Ecosystems Council v. U.S. Forest Serv.,* 428 F.3d 1233, 1238 (9th Cir. 2005). A pre-requisite for an APA claim is a "final [federal] agency action." 5 U.S.C. § 704; 5 U.S.C. § 701(b)(1) (defining "agency" as "each authority of the Government of the United States"). Therefore, a NEPA claim does not lie against a private citizen. As the Ninth Circuit has explained:

> the federal government is the only proper defendant in an action to compel compliance with NEPA . . . [B]ecause NEPA requires action only by the government, only the government can be liable under NEPA. A private party cannot "comply" with NEPA, and, therefore, a private party cannot be a defendant in a NEPA compliance action.

*Churchill Cnty. v. Babbitt*, 150 F.3d 1072, 1082 (9th Cir.), opinion amended and superseded on denial of reh'g, 158 F.3d 491 (9th Cir. 1998), *and abrogated by Wilderness Soc. v. U.S. Forest Serv.,* 630 F.3d 1173 (9th Cir. 2011).[2] Plaintiffs have not pleaded that either ECG6 or its principals were involved with GSA's NEPA process for the lease. To the contrary, as this Court found in its preliminary injunction Order, it would not be proper for Federal Defendants to delegate this responsibility to ECG6. ECF No. 66 at 13 & n.6.[3] Because ECG6 has not, and by definition cannot, commit a "final agency action," Count One against ECG6 should be dismissed for failure to state a claim upon which relief may be granted.

In their preliminary injunction opposition brief, Plaintiffs cited a 22-year-old District of Oregon case and a 34-year-old Ninth Circuit case to justify naming ECG6 as a defendant for this claim, but neither supports their position that a NEPA claim lies against a private real estate investment firm. It is true that the Ninth Circuit has suggested in dicta that state or municipal defendants, when acting to jointly administer a federal program, may be enjoined—as in the case Plaintiffs cite, where the State of Montana was a co-defendant. *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397 (9th Cir. 1992) ("Nonfederal defendants may be enjoined if 'federal *and state* projects are sufficiently interrelated to constitute a single 'federal action' for NEPA purposes.'") (quoting *Friends of the Earth, Inc. v. Coleman*, 518 F.2d 323, 329 (9th Cir. 1975) (emphasis added)); *but see Wilderness Watch v. Perdue*, 805 F. App'x 476, 479 (9th Cir. 2020)

---

[2] The Ninth Circuit later recognized, contrary to its holding in *Churchill County*, that private parties may and often do have protectable interests within the meaning of Rule 24 sufficient to *intervene* as defendants in a NEPA action, and the court therefore abandoned its prior rule prohibiting private party intervention in NEPA cases. *Wilderness Soc*., 630 F.3d 1173, 1180. But the Ninth Circuit has not held that a private party may properly *be sued* under NEPA.

[3] The Court found that ECG6 could be preliminarily enjoined. *Id.* n.9. Because ECG6 has no reason and no intention to perform work to complete an ICE facility while Federal Defendants are enjoined (which would require it to incur debt without knowing when it might be compensated for its efforts), and assuming the preliminary injunction is properly confined to the portion of the property covered by the federal lease, ECG6 will continue to be bound by the order even if this motion is granted.

(limiting the reach of *Fund for Animals* to cases where a nonfederal defendant's action "cannot proceed without the prior approval" of federal agency). And NEPA has long authorized states to prepare NEPA documents under federal supervision. 42 U.S.C. § 4332(G).[4] Whether it is proper, in rare circumstances, for the scope of a court's injunction to extend to state and local participants in a federal program, or recipients of federal assistance, does not mean those entities have independent liability for violations of NEPA. Because the APA prerequisite of "final agency action" is not met as to ECG6, Plaintiffs have failed to state a claim as to ECG6. FED. R. CIV. P. 12(b)(6).

**B. The Court lacks supplemental jurisdiction over Plaintiffs' Williamson Act claim because it does not arise under a common nucleus of operative fact.**

Plaintiffs ask the Court to assert supplemental jurisdiction over their Williamson Act claim. Compl. ¶ 20. Federal courts have supplemental jurisdiction over state-law claims that "form part of the same case or controversy" as associated federal claims, which occurs when the claims share a "common nucleus of operative fact." 28 U.S.C. § 1367(a) ("same case or controversy"); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966) (for supplemental jurisdiction to exist, "[t]he state and federal claims must derive from a common nucleus of operative fact"); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a common nucleus of operative fact with the federal claims.") (internal quotation marks omitted).

For multiple reasons, Plaintiffs' federal and Williamson Act claims do not substantively overlap. They thus fall well short of this common-nucleus threshold, and the Court lacks supplemental jurisdiction over the Williamson Act claim as a result.

As an initial matter, Plaintiffs' federal and Williamson Act claims arise from distinct factual occurrences. The federal claims relate to the January 2025 *lease* between ECG6 and the federal agencies

[4] NEPA was also recently amended to recognize that private applicants may prepare environmental documents under federal supervision, but Plaintiffs' complaint does not (and could not) allege that was done here.

and turn on Federal Defendants' alleged failure to comply with procedures under NEPA, the ICA, and the INA, while the Williamson Act claim turns on the 1967 *contract* (now between ECG6 as owner and the County). Other district courts have declined supplemental jurisdiction under analogous circumstances where state law and federal law claims related to different obligations respecting real property. In *Valles v. Pima County*, the plaintiffs, purchasers of lots in a failed residential subdivision, brought federal claims under the Fifth and Fourteenth Amendment against the local county government for allegedly misapplying the law when regulating the subdivision's development. *Valles v. Pima Cnty.*, 642 F. Supp. 2d 936, 939 (D. Ariz. 2009). They also brought state-law negligence and misrepresentation claims against private participants in the subdivision's development. *Id.* Although the two claims "were both a part of the same chain of events," the court held that the claims did not arise from a common nucleus of operative fact because the county and developer "were involved in different links of the chain." *Id.* at 946–47. Namely, the county's regulation of the failed subdivision was factually distinct and involved different evidence from the actions of the private participants in the development. *Id*. Similarly, Plaintiffs' federal and Williamson Act claims here are based on related but factually distinct events: the federal claims turn on Federal Defendants' alleged failure to comply with procedures under federal law while the Williamson Act claims turn on the nature of defendants' use of the Holsclaw property, as well as whether ECG6 sought renewal or cancellation of the Williamson Act contract, which is not at issue in the federal claims. *Compare* Compl. ¶¶ 171–72, 187, 195–96, 203 *with id.* ¶¶ 217–18.

Furthermore, Plaintiffs' federal claims concern compliance with statutory duties that apply exclusively to federal government actors, while the Williamson Act claim concerns factual issues of contract compliance only relevant under state law. In *Carne v. Stanislaus Cnty. Animal Servs. Agency*, the plaintiffs sued a county animal shelter under California law for allegedly mistreating animals but also brought claims under the First Amendment because the shelter prevented them from filming this alleged mistreatment. The court held that no common nucleus of fact existed because the claims involved different

underlying conduct and required completely different evidence: the federal claim turned on conduct directed at the plaintiffs, while the state claim turned on conduct directed at the animals. *Carne v. Stanislaus Cnty. Animal Servs. Agency*, 445 F. Supp. 3d 772, 774–76 (E.D. Cal. 2020). In *Okanogan Highlands All. v. Crown Res. Corp.*, the court found that federal and state claims did not form part of the same case or controversy where the former's factual predicate was the defendant's alleged noncompliance with a *federa*l water-pollution permit, while the latter's factual predicate was the defendant's alleged violation of a private settlement agreement governed by *state law*. *Okanogan Highlands All. v. Crown Res. Corp.*, 526 F. Supp. 3d 872, 877 (E.D. Wash. 2021). Here, similarly, Plaintiffs' federal claims turn on whether Federal Defendants complied with statutory requirements under NEPA, INA, and ICA, while the Williamson Act claim turns on whether Defendants complied with a Williamson Act contract under California law. *See* Compl. ¶¶ 171–72, 187, 195–96, 203, 217–18.

Finally, the differing interests sought to be vindicated under the federal statutes and the Williamson Act underscore why a different body of facts is relevant to each of these claims. The Williamson Act, according to Plaintiffs' Complaint, imposes substantive requirements "to preserve to the 'maximum' extent the 'limited supply of agricultural land' in the state, which is necessary not only to the maintenance of the agricultural economy of the state, but also for the assurance of adequate, healthful and nutritious food for future residents of this state and nation." Compl. ¶ 66 (citing § 51220(a)). NEPA in contrast is "purely procedural," and "does not mandate particular results, but simply prescribes the necessary process" for environmental review by federal agencies. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Co.*, 605 U.S. 168, 181–85 *Id.* at 169 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989)). Similarly, the ICA requires intergovernmental viewpoints only to be "considered," and "to the extent possible." 31 U.S.C. § 6506(c). "The ICA does not require [the federal agency] to satisfy local concerns; it only requires that they be heard and considered." *City of Waltham v. U.S. Postal Serv.*, 786 F. Supp. 105, 143 (D. Mass. 1992), *aff'd*, 11 F.3d 235 (1st Cir. 1993). In other words, the Williamson Act claim centers

on the property's *use* (or not) for agricultural purposes (and whether ECG as the property's current owner has followed applicable procedures in its dealings with the State and County) whereas the federal claims govern the federal agencies' *analysis and disclosure of* the proposed use has been analyzed and disclosed, including any particular notification obligations unique to the State.

Because Plaintiffs' federal and Williamson Act claims do not arise from a common nucleus of operative fact and thus do not form part of the same case or controversy, the Court lacks supplemental jurisdiction over the Williamson Act claim, and the claim must be dismissed. 28 U.S.C. § 1367(a).

### C. The Court should decline to hear Plaintiffs' Williamson Act claim against Defendant ECG6.

Even if a common nucleus of operative fact exists between federal and state-law claims, the Court may decline to exercise supplemental jurisdiction over a state-law claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). If any of these conditions are present, the Court should consider whether declining to exercise supplemental jurisdiction serves the values of "economy, convenience, fairness, and comity." *E.g.*, *Unite Here Local 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 701 (9th Cir. 2022).

Here, the first and third conditions listed in § 1367(c) are present with regard to Plaintiffs' Williamson Act claim against ECG6 (the "Williamson Act claim"). First, the Williamson Act claim, which turns on the application of California state and local land use and tax policy in an unprecedented context, raises issues of state law that are both novel and complex. 28 U.S.C. § 1367(c)(1). Second, if the Court dismisses Plaintiffs' NEPA claim against ECG6—as it should, given the inapplicability of NEPA claims to private parties, as noted *supra* Section A—the Court will have dismissed the only claim against ECG6 over which it could have original jurisdiction. 28 U.S.C. § 1367(c)(3). In this context, because the factors

of judicial economy, convenience, fairness, and comity weigh against the Court's assertion of supplemental jurisdiction over the Williamson Act claim, the Court should decline jurisdiction and dismiss Count Five as against ECG6.

**1. The Court should decline to exercise supplemental jurisdiction over the Williamson Act claim because it raises novel and complex issues of state law.**

The Court should decline to exercise supplemental jurisdiction over the Williamson Act claim because the claim involves issues of California law that are novel and complex, meriting dismissal under § 1367(c)(1). *See, e.g.*, *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 1022 (9th Cir. 2004) (affirming district court's dismissal of state-law claims that raised "delicate issues involving the interpretation and application of [state] law"). This is both because the Williamson Act claim turns on a complex regime of state land use laws, application and interpretation of which should be reserved to California courts, and because adjudication of the Williamson Act claim would require the Court to apply this state-law regime in a novel context.

"Regulation of land use . . . is a quintessential state and local power." *Rapanos v. United States*, 547 U.S. 715, 738 (2006*); FERC v. Mississippi*, 456 U.S. 742, 767 n.30 (1982). Accordingly, land use is "a sensitive area of social policy . . . upon which federal courts ought not to enter unless no alternative to its adjudication is open." *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1094–95 (9th Cir. 1976) (declining to exercise jurisdiction over claim involving California land use planning). Nonetheless, Plaintiffs' claim asks this Court to adjudicate the quintessential state policy questions, e.g., of whether the intended use of one portion of the Holsclaw Road property complies with the Williamson Act; whether it differs materially from the previous research and development use of the same parcel approved by the County under the Williamson Act; and whether and how the proposed use of the existing office building, parking spaces, and driveway on one acre of the property affects compliance for entire 24.5 acre property.

While the court in *Rancho Palos Verdes Corp.* declined to exercise jurisdiction under the doctrine of *Pullman* abstention, courts in the Ninth Circuit have applied its reasoning when declining to exercise supplemental jurisdiction under § 1367(c). In *Gypsum Res., LLC v. Clark Cnty.*, the court declined supplemental jurisdiction where "[l]and use planning, and decisions related to planning, predominate[d] throughout [the plaintiff's] state-law claims," citing *Rancho Palos Verdes Corp.*'s characterization of land use planning as a "'sensitive area of social policy' that typically falls within the purview of the state." *Gypsum Res., LLC v. Clark Cnty.*, 674 F. Supp. 3d 985, 1010 (D. Nev. 2023). Similarly, in *Bennett v. City of Kingman*, the court quoted the same reasoning when declining supplemental jurisdiction, noting that "[l]and use planning is at the heart of [the plaintiffs'] state-law claims." *Bennett v. City of Kingman*, 543 F. Supp. 3d 794, 812–13 (D. Ariz. 2021).

The Williamson Act is a paradigmatic example of state land use policy; it is a creature of California law in every respect. The Act's legislative findings declare that the preservation of agricultural land is a matter of California public interest, citing the state's economic resources, the need to discourage premature conversion of agricultural land to urban uses, and the value of open space to California communities. Cal. Gov't Code § 51220. There is no federal counterpart to the Williamson Act, no federal statute governing voluntary agricultural land conservation contracts between California local governments and private landowners, and no federal agency with oversight authority over the Act's administration. Instead, administration of the Act is vested in California's cities and counties: county boards of supervisors and city councils establish agricultural preserves, enter into contracts with landowners, adopt rules governing the administration of preserves, and make the adjudicatory findings required for contract cancellation. Cal. Gov't Code §§ 51230, 51240, 51231, 51282.

The California Department of Conservation is invested with authority to interpret the Williamson Act, as well as its "policies, purposes, procedures, administration, and implementation." *Cleveland Nat'l Forest Found. v. Cnty. of San Diego*, 250 Cal. Rptr. 3d 305, 335 (Cal. Ct. App. 2019) (noting that the

"[California] Legislature invested the Department of Conservation" with these powers and describing the Act as a "complex" legislative scheme). And in *Sierra Club v. City of Hayward*, the Supreme Court of California held that California courts "are entrusted with the duty . . . to ascertain whether the [Williamson Act's] statutory procedures are followed." *Sierra Club v. City of Hayward*, 623 P.2d 180, 190–91 (Cal. 1981). The Williamson Act's state land use policy objectives and complex interplay with California state and local authorities provide, on their own, a sufficient basis for the Court to decline supplemental jurisdiction over the Williamson Act claim. *City of Fernley v. Conant*, No. 22-15400, 2023 WL 2549792, at *3 (9th Cir. Mar. 17, 2023) (affirming district court decision dismissing state-law claim after also dismissing a NEPA claim where "Plaintiffs' claims raise "a novel or complex issue of State law," *id*. § 1367(c)(1), and case therefore presented an "exceptional circumstance[ ]" in which there were "other compelling reasons for declining jurisdiction.").

Ninth Circuit courts have also declined supplemental jurisdiction under § 1367(c)(1) where state-law claims involved the application of state or local statutes in novel contexts. In *Manufactured Home Cmtys. Inc. v. City of San Jose*, the Ninth Circuit held that the issue of whether a rent-control exemption applied to mobile homes, a question not previously answered by California state courts, was sufficiently novel to justify declining supplemental jurisdiction under § 1367(c). *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1034 (9th Cir. 2005). And in *Pacific Bell Telephone Company v. City of Walnut Creek*, this Court declined jurisdiction under § 1367(c)(1) when confronted with the novel issue of whether the California Public Utilities Code's authorization of "telegraph or telephone" line construction also granted telephone companies the right to provide video programming services over their telephone lines. *Pac. Bell Tel. Co. v. City of Walnut Creek*, 428 F. Supp. 2d 1037, 1049 (N.D. Cal. 2006). The Court reasoned that "comity suggests that the issues should be resolved in the first instance by a state court." *Id.*

Here, adjudicating the Williamson Act claim would require the Court to rule on issues not previously addressed by California courts: whether partial use of a Williamson Act property (previously

used for research and development) for federal-government offices and a detention center, while maintaining the majority of the property as a bok choy farm, qualifies as a "compatible use" under the Act. Cal. Gov't Code § 51238.1. As in *Manufactured Home Cmtys. Inc.* and *Pac. Bell Tel. Co.*, this question involves a novel application of a statutory standard to an unprecedented institutional use by a federal government entity, and it should be answered in the first instance by a California court. The Court should thus decline jurisdiction under § 1367(c)(1).[5]

**2. The Court should decline to exercise supplemental jurisdiction over the Williamson Act claim if Plaintiffs' NEPA claim against ECG6 is dismissed.**

As shown in *supra* Section A, the Court must dismiss Plaintiffs' NEPA claim against ECG6 because it lacks both legal and factual predicates: NEPA claims may not be brought against private parties such as ECG6, particularly where this Court has already found that ECG6 had no involvement in Federal Defendants' NEPA process. Once the NEPA claim against ECG6 is dismissed, the Williamson Act claim would be Plaintiffs' only remaining claim against ECG6.

Under § 1367(c)(3), supplemental jurisdiction over pendent state-law claims should be declined, and the claims should be dismissed, if their associated federal claims are dismissed. *Gibbs*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed . . . the state claims should be dismissed as well."); *see also*, *e.g.*, *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367–68 (9th Cir. 1992) ("When federal claims are dismissed . . . pendant [sic] state claims also should be dismissed.").

[5] Declining supplemental jurisdiction under § 1367(c) is particularly warranted where, as here, all associated federal claims against ECG6 should be dismissed, *see supra* Section A, *and* the remaining claim raises novel or complex issues of state law. *See, e.g.*, *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1055 (9th Cir. 2004) (holding that "it was error for the district court to have retained the supplemental state claims after the federal claims were dismissed" where the claims involved "important, unsettled, and policy-laden issues of California law"); *R.R. 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 979 (E.D. Cal. 2022) (after dismissal of federal claims, declining to exercise supplemental jurisdiction over remaining state-law claims that raised "complex questions of state law").

In proceedings involving multiple defendants, courts in the Ninth Circuit have applied this principle to decline supplemental jurisdiction over state-law claims against *specific* defendants against whom all federal claims have been dismissed—even if federal claims against *other* defendants remain. In *Watkins v. California Department of Corrections*, for example, the plaintiff brought California law civil rights claims and federal Title VII claims against both the California Department of Corrections and several of its employees. *Watkins v. Cal. Dep't of Corrs.*, 100 F. Supp. 2d 1227, 1228 (C.D. Cal. 2000). The court upheld the federal claim against the Department of Corrections but dismissed the federal claims against the individual defendants, on the basis that Title VII liability is limited to employers and does not extend to an employer's individual agents. *Id.* at 1232. Although the plaintiff's federal claim remained in the action, the court nonetheless declined to exercise supplemental jurisdiction over the state-law claims against the individual defendants, citing § 1367(c)(3). *Id.* Other courts have similarly declined to exercise jurisdiction over state-law claims against certain defendants under § 1367(c)(3) even when federal claims against other defendants remained live. *See, e.g.*, *Timeline, Inc. v. Proclarity Corp.*, No. C05-1013JLR, 2007 WL 1574069, at *9–11 (W.D. Wash. May 29, 2007) (dismissing federal patent infringement claims against defendant and then citing § 1367(c)(3) to decline supplemental jurisdiction over pendent breach-of-contract claims against that defendant, despite survival of federal claims against other defendants); *Zazzali for DBSI Priv. Actions Trust v. Alexander Partners, LLC*, 2015 WL 13640265, at *4 (D. Idaho Feb. 6, 2015) (declining to exercise supplemental jurisdiction after all federal claims were dismissed against certain defendants, even while upholding federal claims against other defendants).

The court's reasoning in *Watkins* is instructive. Like the individual defendants in *Watkins*, who were exempt from Title VII claims, ECG6 is categorically outside the scope of NEPA liability, requiring dismissal of the NEPA claim against ECG6. Thus, as the Central District of California did in *Watkins*, the Court should decline to exercise supplemental jurisdiction over the pendent state-law claim against ECG6.

The survival of federal claims against another defendant did not prevent this outcome in *Watkins* and should not preclude dismissal of the Williamson Act claim under highly analogous posture here.

**3. Judicial economy, convenience, fairness, and comity weigh in favor of declination of supplemental jurisdiction over the Williamson Act claim.**

Finally, the values of "economy, convenience, fairness, and comity," which must be considered by courts deciding whether to decline supplemental jurisdiction under § 1367(c), each support declining jurisdiction over Plaintiffs' state-law claim here.

As an initial matter, when federal claims that provided the basis of federal subject matter jurisdiction over pendent state-law claim have been dismissed, the balance of the abovementioned factors ordinarily weighs against the exercise of supplemental jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial . . . judicial economy, convenience, fairness, and comity . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Likewise, each of the factors individually supports the Court's declination of supplemental jurisdiction over a state-law claim against a non-federal entity in this case, where federal jurisdiction exists because of claims brought under the APA and the Court's federal question jurisdiction. *See* Compl ¶ 20.

Judicial economy and convenience are particularly implicated by the procedural tension between the federal claims in this action, which were brought under the APA, and the Williamson Act claim, which was not. Under 5 U.S.C. § 706, judicial review of federal-agency actions under the APA is limited to the administrative record compiled by the agency, precluding discovery. *See e.g.*, *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 485 (9th Cir. 2023) ("When a case involves review of a final agency determination under the Administrative Procedure Act, our review is limited to the administrative record.") (internal quotation marks omitted); *see also Friends of the Earth v. Hintz*, 800 F.2d 822, 827 (9th Cir. 1986) (affirming district court's holding that "no discovery shall be had" in APA actions where "judicial review of final agency action is limited to the administrative record"). In contrast, claims such as Count Five,

which seek specific performance under the Williamson Act's enforcement provision, Cal. Gov't Code § 51251, are tried as ordinary civil actions subject to normal discovery. *See Cnty. of Humboldt v. McKee*, 82 Cal. Rptr. 3d 38, 45–46 (Cal. Ct. App. 2008) (treating claim under § 51251 as ordinary civil action, including full discovery and motion practice); *see also* Compl. ¶ 214 (bringing a Williamson Act claim under § 51251). Such discovery would cover fact issues related to the County's treatment of the two separate portions of the Holsclaw Road property, each of which is subject to a different lease, as well as potential factual issues related to any of ECG6's affirmative defenses or counterclaims sounding in waiver, consent, or estoppel based on statements by County officials before ECG6 closed on its property. In one case where the complaint raised both APA-reviewed and state law claims against federal and non-federal defendants the district court, noting the procedural differences, declined to exercise supplemental jurisdiction over state law claims because the procedural differences would result in two separate schedules for resolving both. *SLPR, LLC v. San Diego Unified Port Dist.*, No. 06 CV 1327 MMA (POR), 2009 WL 10672896, at *3 & n.4 (S.D. Cal. Oct. 2, 2009).

Because fact-finding generally is not required or allowed under the APA, courts typically resolve APA claims on motions for summary judgment, rather than at trial. *See e.g.*, *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994) (because review of final agency determinations "does not require fact finding on behalf of this court," summary judgment is appropriate for resolving APA claims); *Gill v. Dep't of Just.*, 246 F. Supp. 3d 1264, 1268 (N.D. Cal. 2017) ("Summary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.") (quoting *Stuttering Found. of Am. V. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007)). Conversely, Williamson Act claims are standard civil claims that require fact-finding and may proceed to trial. *See McKee*, 82 Cal. Rptr. 3d at 45–46.

Underscoring these distinctions, the Supreme Court recently held that NEPA claims are purely procedural, resolved on the administrative record under "substantial deference," with the court's role being "a limited one" involving no factfinding. *Seven Cnty. Infrastructure Coal.,* 605 U.S. at 181–85 (noting that in NEPA cases, "[t]he agency is better equipped to assess what facts are relevant"). In line with its procedural nature, NEPA "does not mandate particular results, but simply prescribes the necessary process" for agency environmental review." *Id.* at 169 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989)). The Williamson Act, in contrast, restricts permissible uses of land, subject to the terms of the contract, and therefore prescribes substantive outcomes. Compl. at ¶ 215 ("The Williamson Act contract . . . grants significant property tax relief . . . in exchange for restricting the land's use exclusively to agricultural and compatible uses."). In this context, judicial economy and convenience would be served by dismissing the Williamson Act claim. Retaining supplemental jurisdiction could require the Court to simultaneously manage full civil discovery and pre-trial motion practice for the Williamson Act claim, undermining the streamlined nature of APA review, creating disparate procedural tracks, and potentially delaying resolution of the APA claims. *See Detroit Mem'l Park Ass'n, Inc. v. City of Detroit Bd. of Zoning Appeals*, 105 F. Supp. 3d 769, 779 (E.D. Mich. 2015) (declining supplemental jurisdiction on judicial-economy grounds where maintaining jurisdiction over two sets of claims, one decided by the court and one tried by a jury, would require "two separate trials"); *see also Johnson v. City of San Jose*, 591 F. Supp. 3d 649, 671 (N.D. Cal. 2022) (declining supplemental jurisdiction where one claim could be resolved via a "more expedited procedure" set by statute, so that keeping both claims in the action would needlessly delay resolution of that claim until "after trial").

Similarly, fairness and comity would be served by allowing the Williamson Act claim to be resolved by a state court that is experienced in dealing with such claims, providing the parties with "a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. This is especially the case where, as discussed *supra* § B.1, a claim involves novel issues of state law with significant land-use policy ramifications. *See Millar v.*

*Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1119–20 (N.D. Cal. 2002) (holding that "Comity dictates that it should be California appellate courts, not federal courts, that resolve" state-law issues of first impression). The Williamson Act is a state statute, and Count Five is asserted by state entities against an in-state defendant. Combined with its different procedural path, the facts weigh strongly against exercising supplemental jurisdiction.

**4. Plaintiffs' Williamson Act claim against Federal Defendants should also be dismissed.**

Should Plaintiffs argue that Plaintiffs' Williamson Act claim against Federal Defendants weighs against the dismissal of Count Five as against ECG6, the Court should reject that argument because that claim also is not properly brought against Federal Defendants. First, the reasons to decline supplemental-jurisdiction discussed above, *supra* § B.1, also apply with full force to the Williamson Act claim against Federal Defendants.

Even more fundamentally, the Williamson Act's text cuts against Federal Defendants being bound by the Williamson Act contract and thus, properly named in Count Five. Under Cal. Gov't Code § 51243, Williamson Act contracts are "binding upon . . . all successors in interest of the *owner.*" (emphasis added). When addressing who is bound by Williamson Act contracts, California courts have treated such contracts as binding purchasers of land—not lessees. *See, e.g.*, *McKee*, 82 Cal. Rptr. 3d at 48–58 (noting that a Williamson Act contract "is binding on all successors in interest of the owner" and applying that rule against a successor purchaser and dozens of downstream third-party purchasers); *Cleveland Nat'l Forest Found.*, 250 Cal. Rptr. 3d at 322 (noting that landowners, as the recipients of the Williamson Act's tax benefits, are the parties properly bound by the Act's restrictions). To the extent that a Williamson Act claim properly lies against any of the defendants, it should be brought in state court against the only party actually bound by the Holsclaw property's Williamson Act contract: ECG6, as the property's owner, not Federal Defendants, as its lessees.

Even if the Williamson Act could be construed to apply to Federal Defendants' activities as lessee, an issue of state law which should be decided by a California court, *see* Section B.1, *supra*, Count Five fails to state a claim against Federal Defendants because they have not agreed to be bound by the Holsclaw property's Williamson Act contract. Under the Supremacy Clause, "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943). Where a "governmental action is carried on by the United States itself and Congress does not affirmatively declare its instrumentalities or property subject to regulation," "the federal function must be left free" from interference by the states. *Id.* at 447–448. This is the case even when states seek to enforce broadly applicable laws against the federal government. In *Mayo*, for example, the Supreme Court held that the Supremacy Clause rendered state fertilizer-inspection fees unenforceable where such fees "would be required before executing a function of government." *Id.* at 448. Along the same lines, in *Hancock v. Train*, the Supreme Court held that states cannot enforce pollution-control limitations against "federally owned or operated installations" by requiring that such installations obtain state permits. *Hancock v. Train*, 426 U.S. 167, 168, 198–99 (1976). These cases are analogous to the present action, in which Plaintiffs seek to enforce the Williamson Act's land-use restrictions against the Federal Defendants in their performance of the strictly federal function of regulating immigration.

**CONCLUSION**

Because ECG6 is not a proper defendant under NEPA or the APA, Count One against it should be dismissed. The Court should also dismiss the Williamson Act claim against ECG6 because that claim and the federal claims regarding federal agency decision-making do not arise from a "common nucleus of operative fact." Even if the Williamson Act claim could be said to share a common nucleus of operative fact with the federal law claims, the Court should decline jurisdiction because assuming jurisdiction over these novel and quintessentially state law questions would not serve judicial economy, comity, convenience and fairness and would be the only basis upon which to hold ECG6 in this lawsuit once the NEPA claim

against it is dismissed. Accordingly, the Court should dismiss Plaintiffs' claims against Defendant ECG6 LLC.

DATED: October 14, 2026

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Stacey M. Bosshardt*
Stacey M. Bosshardt
Gregory A. Nylen
Dominic E. Draye